## Case No. 8,012.

### LAMB et al. v. BURBANK et al.

[1 Sawy. 227.][1]

Circuit Court, D. Oregon. July 19, 1870.

PARTITION OF REAL PROPERTY — SUIT IN EQUITY FOR—COVENANT IN DEED AGAINST ACTS OF GRANTOR—COVENANT FOR FURTHER ASSURANCE —CONSTRUCTIVE POSSESSION.

1. Where the legal title is not in dispute, a suit for partition of real property may be maintained in a court of equity, although the equitable title to the whole premises is claimed by certain of the defendants and disputed by the complainants.

2. A covenant in a deed "against the claims of all persons claiming by, through or under the grantors," only operates upon the estate in the granted premises which the covenantor then had.

[Cited in Traver v. Baker, 15 Fed. 192.]

3. Such a covenant only refers to the existing title or interest granted, and does not bar the covenantor from claiming the same premises

---

against his own covenantee or grantee by an after acquired title.

[Compare Traver v. Baker, 15 Fed. 192.]

4. A covenant in a deed, that if "the grantors obtain title from the United States, they will convey the same to the grantees by deed of general warranty, is a covenant for further assurance, and entitles such grantees, when the contingency happens, to such conveyance of the legal title.

5. A person seized in fee simple, has constructive possession of the premises of which he is seized, and will be presumed to be in the actual possession thereof, until the contrary appears.

[6. Cited in Lamb v. Wakefield, Case No. 8,024, to the point that the parties to the partition neither gain nor lose by it.]

[This was a bill in equity by John R. Lamb and Emma Lamb, his wife, and Ida Squires, against A. R. Burbank, J. P. O. Lownsdale, Millard O. Lownsdale, Ruth A. Lownsdale, and Mary E. Cooper, for a partition of real property. Heard on demurrer.]

W. Lair Hill and Walter W. Thayer, for complainants.

David Logan and Erasmus D. Shattuck, for defendants.

DEADY, District Judge. This suit was commenced on May 24, 1869. On July 24, thereafter, the defendant, Burbank, demurred to the bill. After argument of the demurrer, the plaintiffs had leave to file an amended bill, which they did on February 3, 1870. From this amended bill it appears:

I. That the plaintiffs are citizens of Kentucky, and that the defendants are citizens of Oregon; and that on May 4, 1862, one Daniel H. Lownsdale died intestate at Portland, leaving as his only heirs-at-law, the plaintiffs, Emma S. Lamb, the wife of John R. Lamb, and Ida Squires, the children of Sarah Squires, deceased, and the daughter of said Daniel H. and the defendants, his children, Mary E. Cooper, J. P. O. Lownsdale, Millard O. Lownsdale and Ruth A. Lownsdale; and that said Daniel H. died seized in fee simple of lot 4, in block 7, in the city of Portland aforesaid, and that said heirs are now seized of the same in fee simple as tenants in common—the said plaintiffs. Emma S. Lamb and Ida Squires, being so seized of one tenth thereof each, and the other four heirs of one fifth each; and that the interests of the plaintiffs in said lot are of the value of more than $1,000.

II. That the defendant, Burbank, claims some equitable right in said premises, arising out of the facts and circumstances which follow, namely: that on March 8, 1850, the said Daniel H., and one Stephen Coffin and W. W. Chapman, were occupying in common a tract of land including the premises in controversy, known as the "Portland Land Claim," and that the title thereto was not in either of said occupants, but wholly and absolutely in the United States; and that the said Chapman, being desirous to acquire the exclusive interest in said lot as against said Daniel H. and others in like situation, did, together with

---

said Coffin, and one L. B. Hastings and D. S. Baker, make a certain writing or deed, wherein the said Daniel H., Coffin and Chapman, and Hastings and Baker, were named grantors, and the said Chapman, Hastings and Baker were named grantees, and the said Chapman, claiming to be the attorney-in-fact of said Daniel H., signed his name thereto.

III. That said writing of March 8, 1850, upon its face purports to be a deed, whereby and for the consideration of $900 in hand paid, the said Chapman, Daniel H., Coffin, Hastings and Baker, "proprietors of Portland," among other things, undertake to "release, confirm and quitclaim unto" said Chapman, Hastings and Baker, lot 4 in block 7, in Portland, with covenants "to warrant and defend the said property against the claims of all persons claiming by, through or under the grantors," and, further, that if "they (the grantors) obtain title from the United States, they will convey the same to the grantees by deed of general warranty;" and that upon the back of said instrument was written the following: "For value received we agree to release to W. W. Chapman our interest in the within lots. Given under our hands and seals this March 27, 1850." (Signed and sealed by S. B. Hastings and D. S. Baker); and that said Burbank claims to have acquired in some way from said Chapman the interest so attempted to be released in said lot.

IV. That said Daniel H., as the bill charges, had no knowledge of the making of the writing of March 8, aforesaid, and that the same was not witnessed or acknowledged, and that as to said Daniel H., there was no consideration for the execution of the same, and that said Chapman had no power or authority to sign the name of said Daniel H. to said writing, or any such, or to bind him by any of the covenants or provisions contained therein, and that said writing is not the deed of said Daniel H.; neither did he ratify or confirm the same, nor was it ever delivered; but the said Chapman retained the possession thereof after the signing of it as aforesaid, nor did any interest in or possession of said lot pass by virtue of said writing; but that the same is wholly fraudulent and void; and that afterwards said Chapman attempted to convey the pretended interest in the premises claimed to have been acquired by the means aforesaid to certain parties who conveyed the same to said Burbank, but that said attempted conveyances were informal and often without consideration, of which facts Burbank had notice; and that afterwards, on March 20, 1862, said Chapman and Coffin, to strengthen the color of right, attempted to be created by said writing of March 8, aforesaid, went before the county judge, Edward Hamilton, and acknowledged the execution of the same, and thereupon, at the instance of said Chapman or Burbank, it was recorded in the office for the record of deeds; and that said Hastings and Baker never had any interest in the Portland land

claim, unless under some private agreement with Chapman, or in the execution of said writing, and their names were used thereto, simply to give color to the transaction and thereby assist Chapman in his attempt to acquire the interest of said Daniel H. in said lot 4.

V. That after the making of the writing of March 8, aforesaid, and after the passage of the act of congress, approved September 27, 1850 [9 Stat. 496], commonly called the donation law, said Daniel H. by a compliance with the provisions of said act acquired a title from the United States to certain lands, including said lot 4; and that in June, 1865, a patent therefor was duly issued to said Daniel H. and his heirs, under which the aforesaid heirs at law derive their title aforesaid.

VI. That the said Burbank has no other interest in the premises than that arising from the facts and circumstances above stated, but he claims an interest or right under the same to said lot and to the possession thereof, which claim constitutes a cloud upon the title of the plaintiffs and other heirs of said Daniel H. to the premises, and hinders and obstructs a partition thereof between said plaintiffs and other heirs, wherefore the plaintiffs pray that said Burbank may, by the decree of this court, be barred from setting up or asserting any claim to said lot 4, and that the plaintiffs' title may be declared and that the premises may be partitioned between themselves and the other heirs aforesaid.

Afterwards, on February 28, 1870, the defendant Burbank demurred to the amended bill, and assigned for causes of demurrer:

1. That it appears that the plaintiffs have a legal title to the premises and a complete remedy against the defendant at law.

While it is true that it appears from the amended bill that the plaintiffs and the defendants, their co-heirs, have the legal title to the premises, it does not follow that as to the claim of the defendant Burbank, they have any remedy at law. A false or pretended claim of title, that amounts to a cloud upon the true title can only be relieved against in equity. So far as now appears, Burbank's claim to this property is without right, but at the same time is founded upon such facts and circumstances, as makes it a cloud upon the title of the plaintiffs and hinders and obstructs a partition of the property between the heirs.

2. That it appears that the title to the premises is in dispute and the defendant holds the same adversely to the plaintiffs.

Now it does not appear as in this cause of demurrer alleged, that the defendant Burbank holds the property adversely to the plaintiffs, or at all, but only that he claims an equitable right or interest therein and a right to the possession thereof by reason of the facts and circumstances above mentioned. Nor does it appear that the title is in dispute —the legal title. So far as the equitable title

is concerned if that is in dispute that itself is a good reason for bringing this suit or making Burbank a party to it. Equitable titles belong particularly to courts of equity and cannot be sent to courts of law. Coxe v. Smith, 4 Johns. Ch. 276.

Upon the amended bill, the legal title is in the heirs of Daniel H. as tenants in common. If the writing of March 8 was executed by authority of Daniel H., and bound him and his heirs, still the legal title is in these heirs, and Burbank only has a right in equity to have a conveyance of such legal title. At the date of the writing of March 8, 1850, none of the parties had any interest in the land, except the bare possession—the legal title was in the United States.

The first covenant in the writing is a special or limited covenant of warranty, "against the claims of all persons claiming by, through or under the grantors," and only operates upon the estate which Daniel H. then had in the premises. It is well settled that such a covenant only refers to the existing title or interest granted, and does not bar the covenantor from claiming the same premises against his own covenantee or grantee by title acquired subsequent to the making of his own deed. 2 Washb. Real Prop. p. 665.

So in this case, Daniel H. acquired the title to this property from the United States long after the date of the writing which contains this covenant, and he or his heirs hold it unaffected by it. The second covenant, that if "the grantors obtain title from the United States they will convey the same to the grantees by deed of general warranty," is a covenant for further assurance, and was intended to meet the contingency which afterwards happened—that the United States should grant the premises to Daniel H. Assuming, then, for the present, that it should be determined upon the final hearing of the cause that the writings and conveyances under which Burbank claims are valid and sufficient for the purposes and intents expressed therein, the heirs would have the title, and Burbank would be entitled in equity to a conveyance of the same. But in the meantime it is charged in the bill that these writings are fraudulent, informal and void, and are only a cloud upon the title of the plaintiffs. The inquiry involves the question of whether Burbank is entitled in equity to have a conveyance of the land from the heirs of Daniel H.—whether by virtue of the second covenant he has an equitable estate in the premises or not. To determine this question is the proper province of a court of equity.

3. It does not appear that the plaintiffs are in possession of the premises. Whether it is necessary that the plaintiffs should be in actual possession of the premises to enable them to maintain this suit as against Burbank, need not be considered. It appears that they are seized in fee simple. This gives them constructive possession and the right to the actual possession, which will be presumed

until the contrary appears. The demurrer is overruled.

[NOTE. For a similar case brought by the same plaintiffs against different defendants upon substantially the same facts, see Lamb v. Kamm, Case No. 8,017. For other suits by the same plaintiffs against other claimants of interest in the "Portland Land Claim," see Cases Nos. 8,-024. 8.015, 8,023. For suits brought against these plaintiffs in the same matters, see Cases Nos. 4.769, 4,775, 4.776. For suits brought by the plaintiffs for their interest under Nancy Lownsdale, see Cases Nos. 8,021, 8,022, 8,013.]